U.S. DISTRICT COURT
NORTHERN DISTRICT OF TEXAS
FILED

AUG 2 7 2008

CLERK, U.S. DISTRICT COURT
By _____
Deputy

ALBERT CLINTON RICHARDS, §
§
Petitioner, §
§
VS. § NO. 4:07-CV-118-A
§
NATHANIEL QUARTERMAN, DIRECTOR, §
TEXAS DEPARTMENT OF CRIMINAL §
JUSTICE, CORRECTIONAL §
INSTITUTIONS DIVISION, §
§
Respondent. §

MEMORANDUM OPINION
and
ORDER

After having considered the petition of Albert Clinton

Richards ("Richards") for writ of habeas corpus by a person in

state custody pursuant to the authority of 28 U.S.C. § 2254,

items filed by the parties in this action subsequent to the

filing of the petition, the state court records pertaining to the

criminal case against Richards and Richards's state habeas

petition, and the record of the hearing conducted in this action

on July 21-22, 2008, the court has concluded that Richards's

petition should be conditionally granted for the reasons given

below.

I.

Background and Overview

For procedural background, the court adopts and incorporates here by reference the discussion at pages 1-4 of the Memorandum Opinion and Order the court signed in this action on June 2, 2008 ("June 2 Order"). Richards v. Quarterman, No. 4:07-CV-118-A, 2008 WL 2346184, at *1-2 (N.D. Tex. June 2, 2008).[1] As reflected by that discussion, the court concluded that the only ground of Richards's motion that deserved further consideration was his ineffective-assistance-of-counsel ground. The areas of concern the court has about Richards's trial representation were and continue to be as follows:[2]

1. Trial counsel's failure to apprise the jury of the dead man's own descriptions of events preceding his death that significantly varied from the pre-death sequence of events developed by the prosecutor at trial, id., at *2-10;

2. Trial counsel's failure to request a lesser-included offense instruction, id., at *10-11;

_____

[1]The date on which the jury returned its verdict against Richards is incorrectly stated in the June 2 Order to be October 3, 2003. The correct date is October 30, 2003.

[2]The court adopts and incorporates here by reference the discussions contained in the June 2 Order explanatory of the court's concerns about the effectiveness of Richards's trial counsel. Richards v. Quarterman, No. 4:07-CV-118-A, 2008 WL 2346184, at *2-12 (N.D. Tex. June 2, 2008).

3. Trial counsel's failure to put into evidence the rating decision records of the Department of Veterans Affairs pertaining to Richards's physical condition in mid-2002, id., at *11-12; and

4. More generally, trial counsel's failure to properly prepare for trial by interviewing important witnesses in advance of trial, failure to have an organized plan of defense, and failure to conduct Richards's defense in an acceptable manner. Id., at *10-11.

On June 16, 2008, respondent, Nathaniel Quarterman, Director, Texas Department of Criminal Justice, Correctional Institutions Division, filed his response to the concerns expressed by the court in the June 2 Order. On June 23, 2008, Richards, through his court-appointed counsel, Danny D. Burns, amended Richards's petition for relief by abandoning the grounds the court had concluded were without merit, and focusing on Richards's ineffective-assistance-of-counsel ground.

An evidentiary hearing was held July 21-22, 2008. The parties have submitted post-hearing briefs.

II.

<u>The Hearing and Fact-Finding
Procedures Pursued in the State Court
Habeas Action Were Unacceptable</u>

Texas law contemplates that an application for writ of
habeas corpus by which the applicant seeks relief from a felony
judgment imposing a penalty other than death will be directed to
the Court of Criminal Appeals of Texas.  Tex. Code Crim. P. art.
11.07, §§ 1, 3(a) (Vernon Supp. 2008).  The processing of the
application is handled by the trial court in which the conviction
occurred ("state trial court").  <u>Id.</u> § 3(b)-(d).  After the state
trial court has held a hearing, if appropriate, and has made
findings of fact pertinent to the grounds of the application, the
clerk of that court transmits to the Court of Criminal Appeals
the application, other documents filed in the proceeding,
transcripts of all hearings, any affidavits, and any other
matters used by the state trial court in resolving issues of
fact.  <u>Id.</u> § 3(d).  Upon reviewing the record, the Court of
Criminal Appeals enters its judgment remanding the applicant to
custody or ordering his release, as the law or facts may justify.
<u>Id.</u> § 5.

The procedure prescribed by Texas law seems reasonable.
However, its application to Richards's state habeas application

4

was not. The state trial court purported to have a hearing on Richards's state habeas application and purported to make findings of fact, but, as explained below, did neither in a meaningful way.

On December 22, 2005, the State of Texas ("State"), through the office of the Tarrant County Criminal District Attorney ("Prosecutor"), filed its opposition to Richards's state court application. The State alleged that there was a need for the expansion of the record, but that the only expansion needed was an affidavit from Richards's trial counsel, Jill L. Davis, ("Davis") addressing Richards's allegations that he received ineffective assistance of trial counsel. State Habeas R. at 147-unnumbered page. The State concluded its opposition with a prayer that the state trial court order Davis to provide such an affidavit. Id. at 148.

On January 3, 2006, the state trial court signed a memorandum and order directing that:

> A hearing will be held **by affidavit only** in the above-captioned case concerning Applicant's allegations of ineffective assistance of trial counsel in cause number 0879190D. This hearing will consist of an affidavit from Hon. Jill L. Davis relative to her representation

of Applicant in the trial proceedings of this cause and addressing Applicant's specific allegations.

Id. at 150.  No provision was made for Richards to participate in the "hearing" by affidavit or otherwise.  The order specifically directed that Richards "is **NOT** to be brought back to the Tarrant County Jail for this hearing."  Id.

The affidavit Davis filed February 2, 2006, State Habeas R. at 151-54, was prepared by Davis in consultation with, and with the assistance of, the Prosecutor.  Tr. of July 21 Session at 128-29, 131-33; Tr. of July 22 Session at 9-10.  A comparison of Davis's handwritten version with the filed affidavit discloses that the statements in the affidavit that are responsive to the grounds of Richards's state court application concerning the adequacy of Davis's representation of Richards were added to the text of Davis's initial draft after Davis conferred with the Prosecutor.  Pet'r Ex. 11; State Habeas R. at 151-54.  The explanations given in the affidavit for Davis's questioned conduct in the representation of Richards were in important respects merely conclusory, without explanation, and could not provide a basis for informed findings of fact.

On October 27, 2006, the State, acting through the Prosecutor, filed in the state trial court its proposed

memorandum, findings of fact, and conclusions of law.  Id. at

278-91.  As proposed findings of fact related to the questioned

conduct of Davis, the State, for all practical purposes, simply

parroted the statements on those subjects contained in Davis's

affidavit.  Id. at 283, ¶¶ 49, 55, 56, 59, & 60; at 284, ¶ 63.

Six days later, on November 2, 2006, the state trial court issued

an order stating that it "adopts the State's Memorandum, Findings

of Fact, and Conclusions of Law as its own, and recommends that

relief requested by Albert Clinton Richards ("Applicant") be

**DENIED**."  Id. at 293.  The clerk of that court was directed to

file "these findings and transmit them along with a Writ

Transcript to the Clerk of the Court of Criminal Appeals as

required by law."  Id.  On January 31, 2007, a judge of the Court

of Criminal Appeals signed a one-sentence order advising that the

"ACTION TAKEN" was "DENIED WITHOUT WRITTEN ORDER ON FINDINGS OF

TRIAL COURT WITHOUT HEARING."  Id. at 2d p. (unnumbered page

behind cover sheet).

It might be charitable to describe the steps leading to the

denial of Richards's state application as a series of charades.

The conduct of the state trial court in complying with the

State's suggestion that the only expansion of the record needed

was an affidavit from Davis, and ordering that a hearing would be

7

granted <u>by way of affidavit only from Davis</u>, was an absurd
pretense that Richards was being given a hearing on his
application.  No provision having been made for Richards to have
a role in the "hearing," the degree of fairness and objectivity
of the proceeding deteriorated from there.

"[A] federal evidentiary hearing is required unless the
state-court trier of fact has after a full hearing reliably found
the relevant facts."  <u>Townsend v. Sain</u>, 372 U.S. 293, 312-13
(1963).  Here, the state trial court did not reliably find the
relevant facts after a full hearing.  The principles of <u>Townsend</u>
must now be considered in the light of the Antiterrorism and
Effective Death Penalty Act ("AEDPA"), which has a specific
provision, codified as 28 U.S.C. § 2254(e)(2),[3] governing when a

---

[3]Title 28 U.S.C. § 2254(e)(2) reads:

**(e)(2)** If the applicant has failed to develop the factual basis of a claim in State
court proceedings, the court shall not hold an evidentiary hearing on the claim unless the
applicant shows that--

    **(A)**    the claim relies on--

        **(i)** a new rule of constitutional law, made retroactive to
cases on collateral review by the Supreme Court, that was previously
unavailable; or

        **(ii)** a factual predicate that could not have been
previously discovered through the exercise of due diligence; and

    **(B)**    the facts underlying the claim would be sufficient to
establish by clear and convincing evidence that but for constitutional

(continued...)

federal court can hold an evidentiary hearing on a claim made in a petition under 28 U.S.C. § 2254.

Section 2254(e)(2)'s restriction on the grant of a hearing applies only if "the applicant has failed to develop the factual basis of a claim in State court proceedings." McDonald v. Johnson, 139 F.3d 1056, 1059 (5th Cir. 1998) (quoting 28 U.S.C. § 2254(e)(2)). A "petitioner cannot be said to have failed to develop a factual basis for his claim unless the undeveloped record is a result of his own decision or omission." Id. (quotation marks omitted). The need to develop a record in this action on Richards's ineffective-assistance-of-counsel claim was not the result of Richards's own decision or omission.

Therefore, in determining to have a hearing, the court was guided by the Townsend principles and Rule 8(a) of the Rules Governing Section 2254 Cases in the United States District Courts, which provides that "[i]f the petition is not dismissed, the judge must review the answer, any transcripts and records of state-court proceedings, and any materials submitted under Rule 7 to determine whether an evidentiary hearing is warranted." See

---

[3](...continued)
        error, no reasonable factfinder would have found the applicant guilty of
        the underlying offense.

<u>McDonald v. Johnson</u>, 139 F.3d at 1060; <u>see also</u> RANDY HERTZ & JAMES

L. LIEBMAN, FEDERAL HABEAS CORPUS PRACTICE AND PROCEDURE § 20.1b 892 (5th

ed. 2001).

III.

<u>This Court is Not Bound by the Findings and
Adjudications of the State Court
on the Ineffective-Assistance-of-Counsel Ground</u>

The ability of this court to make determinations

supplementing or at variance with the findings and adjudications

made by the state court is controlled by an application of 28

U.S.C. § 2254(d).[4]  The court has concluded that the sate court's

rejection of Richards's ineffective-assistance-of-counsel ground

was based on unreasonable determinations of the facts in the

light of the evidence presented in the state court proceeding.

<u>See</u> 28 U.S.C. § 2254(d)(2).  The affidavit of Davis, which was

_____

[4]Title 28 U.S.C. § 2254(d) reads:

(d)     An application for a writ of habeas corpus on behalf of a person in
custody pursuant to the judgment of a State court shall not be granted with respect to any
claim that was adjudicated on the merits in State court proceedings unless the
adjudication of the claim--

(1) resulted in a decision that was contrary to, or involved an
unreasonable application of, clearly established Federal law, as determined by
the Supreme Court of the United States; or

(2) resulted in a decision that was based on an unreasonable
determination of the facts in light of the evidence presented in the State court
proceeding.

the only thing on which the state court could rely for its findings concerning Davis's justifications for her pretrial and trial conduct, was not adequate to form the basis for informed findings on those subjects. The record of Richards's criminal trial is sufficient to raise concerns about Davis's conduct, but is devoid of anything that would acquit her.

Moreover, the rulings of the state court denying Richards's ineffective-assistance-of-counsel ground involve unreasonable applications of clearly established federal law, as determined by the Supreme Court. See 28 U.S.C. § 2254(d)(1). "The court may grant relief under the 'unreasonable application' clause if the state court correctly identifies the governing legal principle from [the Supreme Court's] decisions but unreasonably applies it to the facts of the particular case." Bell v. Cone, 535 U.S. 685, 694 (2002). And, "[t]he focus of the latter inquiry is on whether the state court's application of clearly established federal law is objectively unreasonable . . . ." Id. While the state court correctly identified principles adopted by the Supreme Court in Strickland v. Washington, 466 U.S. 668 (1984), it unreasonably applied them to the facts of this particular case. See Perez v. Cain, 529 F.3d 588, 594 (5th Cir. 2008). See also Harrison v. Quarterman, 496 F.3d 419, 424 (5th Cir. 2007)

11

(stating that "[a] decision constitutes an 'unreasonable application' of clearly established federal law if it is 'objectively unreasonable.'").  In this case, the determinations of the state court as to Richards's ineffective-assistance-of-counsel ground were objectively unreasonable under the state court record.

Any presumption of correctness of determinations made by the state court relevant to Richards's ineffective-assistance-of-counsel ground has been rebutted by clear and convincing evidence.  <u>See</u> 28 U.S.C. § 2254(e)(1).[5]

IV.

<u>Observations Concerning Credibility of Witnesses</u>

The witnesses who testified at the July 21-22, 2008, hearing were Tiffany Burks ("Burks"), one of the prosecutors at Richards's criminal trial; Davis; Richards; and Deborah Cauffman ("Cauffman"), a non-lawyer legal assistant employed by Davis.  The court has made the following credibility evaluations, in a

_____

[5]Title 28 U.S.C. § 2254(e)(1) reads as follows:

(e)(1)  In a proceeding instituted by an application for a writ of habeas corpus by a person in custody pursuant to the judgment of a State court, a determination of a factual issue made by a State court shall be presumed to be correct.  The applicant shall have the burden of rebutting the presumption of correctness by clear and convincing evidence.

general way, as to the witnesses:

Burks.

The court has no reason to question the credibility of Burks. Unfortunately, she had very little memory of events relevant to Richards's ineffective-assistance-of-counsel claim, but, as the court will note, she made certain points that are probative. Infra at 31 n.15, 36 n.17.

Davis.

After having heard Davis's testimony and compared it with the documentary evidence, and having observed her demeanor on the witness stand, the court has serious concerns about the credibility of Davis. Examples of reasons for those concerns are discussed below.

(a) As part of her attempt to define a trial strategy that would explain her conduct in preventing, by way of hearsay objections, the prosecutor from developing at Richards's trial exculpatory testimony concerning statements the alleged victim, Cullen Baker, ("Baker") made after his injury concerning the circumstances of his injury, Davis testified that until mid-trial (when Richards's brother testified that Richards told him that he had hit Baker with a rock) Richards consistently had maintained

that he had not hit Baker.  She testified that:

> THE COURT:  Your client had never indicated
> to you before his brother testified at trial, your
> client before that had never indicated to you that he
> did hit Mr. Baker?
>
> THE WITNESS:  Not only not indicated, he was
> adamant that he did not.  That he did not.

Tr. of July 21 Session at 51.  At another point in the hearing,

Davis testified that it was shocking when Richards admitted to

her at the counsel table that he had hit Baker.  Tr. of July 22

Session at 27.  She added that she based her trial strategy on

statements Richards told her "over and over" that he had not hit

Baker.  Id. at 28.

A handwritten note contained in a file folder Davis had with

her when she came to the courthouse to testify[6] suggests that her

testimony was false.  The note reads in its entirety as follows:

> Has offer of 5 on murder --
>
> "Fight on Thurs.  I passed out come to he was coming
> after me--hit him with rock - (Ron Watkins also had
> problems with dead man)  Found dead on Sunday - Gets
> $625 a month disability --

---

[6]A fair inference is that Davis did not anticipate that the court or Richards's counsel would see the file folder.  She did not bring it to the witness stand with her, and it became an exhibit at the court's initiative when she retrieved it to determine the date when she started representing Richards.  Tr. of July 21 Session at 32-33, 38-40.

Try get bond reduced.  Motion for speedy trail
[sic] --

No court date --

Pet'r Ex. 11, note on yellow paper on right side of file folder
(emphasis added).[7]  Obviously this note records what Richards
told Davis in advance of trial.[8]

Also, there is evidence in Petitioner's Exhibit 11 of
Davis's deception when she testified that she did not know until
mid-trial that Richards's brother would say that Richards told
him that Richards struck Baker.  Tr. of July 21 Session at 49-51.
Inside the cover of Petitioner's Exhibit 11 is a form titled
"CLIENT INFORMATION SHEET."  It was filled out for the most part
by Richards's brother when he hired Davis.  Id. at 43.  The
handwriting in the "CASE DETAILS" section appears to be the
handwriting of Karen Casey, who was Davis's legal assistant at
that time.  Id.  Part of that entry is marked through.  Davis
said that she cannot tell what words were marked through.  Id. at
44.  Upon close study, the words can be made out.  When they are

---

[7]The contents of the note suggest that it was probably written about the time Davis replaced
Richards's court-appointed attorney.

[8]About ten or fifteen minutes before the trial started Richards discussed with Davis that the rock
he hit Baker with was big enough to fit in the palm of his hand.  Tr. of July 21 Session at 90-91.

included in the "CASE DETAILS" entry, the entry reads as follows:

> Homeless guy - victim   white guy
> - he's a truck driver; has a CDL
>   he was out on a binge, in a tent, the I.P. hit him
> - w/a stick, <u>Albert hit him w/a rock</u>.

Pet'r Ex. 11 at inside of front cover.  The underlined part is the part that is marked through.

The contents of the record make clear, and the court finds, that Davis knew in advance of trial that Richards struck Baker with a rock.  And, she knew from the outset that Richards told his brother that Richards hit Baker with a rock.[9]

---

[9]Davis sought to give credibility to her false testimony by maintaining that during a discussion she had with Burks in the courtroom hallway, Burks told her that her recollection is that she and her fellow prosecutor at Richards's trial, Michelle Hartman, first knew that the brother would testify that Richards told him he had hit Baker was when he said so from the witness stand. Tr. of July 22 Session at 37.  The record of the trial does not bear out those assertions:

> Q.    Did your brother tell you whether or not he had injured this man that was found dead in the tent?
>
> MS. DAVIS:  I'm going to object to hearsay.
>
> THE COURT:  Overruled.
>
> Q.    You can answer the question.
>
> A.    He told me in self-defense.
>
> Q.    What did he tell he had done?
>
> A.    He said the guy hit him with a stick and he tried to get him off of him and hit him with a rock.

Trial Tr., Vol. 3 at 82.  Hartman presumably knew what the answer would be when she asked the question.  The fact that Davis objected to the question confirms that she, notwithstanding her sworn testimony to the contrary, also knew what the answer would be.

(b)  Davis gave testimony, and made statements in her
affidavit, indicating that she had several visits with Richards
while he was in jail.  Id. at 134.  In contrast, Richards
testified that Davis came to see him in jail only one time before
the day the jury was picked, and that visit was for her to learn
how to get her money.  Id. at 86.  The record tends to
substantiate Richards's version.  The file folder Davis brought
to the hearing contains a letter dated July 2, 2003, from
Richards to Davis that suggests that she was not appropriately
communicating with him.  Pet'r Ex. 11, handwritten letter dated
July 2, 2003.  Payment of Davis's fee by Richards's brother is a
significant topic in the letter.  On the back page of the State's
list of witnesses (showing a date of service of October 27, 2003)
contained in the trial notebook that was identified by Cauffman
as Davis's, there is a handwritten note saying "ROGER PLEASE
RELEASE $2,000 TO JILL DAVIS PLEASE."  Resp't Ex. 3 at 23A.
Davis testified that this note probably was written by Richards
when she saw him in jail.  Tr. of July 22 Session at 35-37.

(c)  Another example is found in the evidence pertaining to
existence and availability of the file material Davis said she
created in her preparation for, and participation in, Richards's
criminal trial.  Counsel for Richards tried without success on

more than one occasion in advance of the hearing to discuss with Davis, or at least review, her file pertaining to her representation of Richards.  Tr. of July 21 Session at 105-06.  When Davis appeared as a witness, she produced the file folder mentioned above that contained very limited information concerning Richards's criminal case.  Tr. of July 21 Session at 32-33, 37-40; Pet'r Ex. 11.  Davis testified that during the trial she made notes on a legal pad.  Tr. of July 21 Session at 143.  She agreed during an overnight recess to try to locate her trial notes.  <u>Id.</u> at 143-44.  The following day she reported that she had not been able to find them.  Tr. of July 22 Session at 5.

In Davis's state habeas affidavit she said that she and her investigator went to the area where the altercation occurred and "met many men who were familiar with Albert and the deceased" and "wrote down the names of the men [they] interviewed."  State Habeas R. at 151.  But, when asked to produce everything she had pertaining to Richards's case, she did not produce any handwritten notes made by her or her investigator pertaining to any actual or potential witnesses.

When Cauffman appeared to testify, she failed to bring any file material.  Just before the lunch recess on July 21 Cauffman testified that she thought the file material would be back at the

office and that she would try to locate it during the recess. Tr. of July 21 Session at 97-98. When Cauffman returned from the recess, she brought with her two trial notebooks containing material pertaining to Richards's case. Id. at 101. She said that she found them in the office of a lawyer who practices with Davis. One of the notebooks, Respondent's Exhibit 3, is the trial notebook Davis used, and the other, Respondent's Exhibit 4, is the one Cauffman used. Id. at 102. The notebooks did not contain any witness information other than information that the State had given either Davis or the attorney she replaced or any notations pertaining to the trial itself.

At a later point in the hearing, when asked if there was a possibility that other file material could be found, Davis responded that she was satisfied that she could not find it. Id. at 94. But, none of the items marked as exhibits contained the kind of notations, such as notes of witnesses' names and addresses and reports of witness interviews,[10] that normally would be contained in a file pertaining to trial preparation of a criminal case. Davis's testimony as to the existence or whereabouts of items of that kind was puzzling. In one breath

---

[10]The notebooks did contain witness statements, but only those that had been furnished to Davis or her predecessor by the prosecutor.

she indicated notes of identities of witnesses and witness information were made, and in another she indicated that they were not--at least were not maintained as part of her file. Davis said that her investigator talked to different witnesses, and made notes when he did so, but never provided notes or copies thereof to her. Id. at 136-38. At one point she indicated that she probably threw handwritten notes pertaining to identities of potential witnesses away as the pretrial investigation progressed. Id. at 139-40.

The court concludes that the file material that finally was produced represents everything created by Davis and those working with her as part of their trial preparation and that the foot-dragging over producing all of the material at the hearing had as its goal preventing the court from seeing that Davis's trial preparation material did not include the things that would have been included if Davis had properly prepared for trial.

(d) Another matter of concern is that Davis made statements in the habeas affidavit that were contrary to the testimony she gave at the hearing and/or statements she made on the record at the criminal trial. For instance, she said in her affidavit that the state witnesses were not made available to the defense, thus rendering it nearly impossible to interview them before the day

of trial, but that she did speak to them before their testimony in the witness area of the courthouse. State Habeas R. at 152-53. The record of the trial itself establishes that last part of that statement is untrue. The trial record affirmatively shows that Davis had not visited at all with important witnesses Oakley, Brown, and Qualls before they took the witness stand. See Richards, 2008 WL 2346184, at *10; Trial Tr., Vol. 3 at 26-27; Vol. 4 at 100, 150. Davis had no memory of whether her investigator made contact with Brown or Qualls in advance of Richards's trial. Tr. of July 22 Session at 50-51.

*　　*　　*　　*　　*

The court's overall impression of Davis's testimony is that she was doing what she could to assist the State in defeating her former client's habeas petition, even if it meant being less than candid. To the extent any findings and conclusions the court expresses in this memorandum opinion and order are at variance with testimony Davis gave at that hearing, the variance is because the court is unwilling to accept as accurate the testimony of Davis.

Cauffman.

The court has much the same concerns about the testimony of Cauffman that the court has with Davis's testimony. The court's

impression is that Cauffman joined Davis in doing what she could to assist the court in defeating the habeas petition, aligning her testimony with Davis's in areas where the court believes that Davis was less than candid. Findings and conclusions of the court in this memorandum opinion and order at variance with Cauffman's testimony do not overlook her testimony but reflect the court's unwillingness to accept it because of credibility concerns.

Richards.

As the record of the hearing reflects, the court had, and expressed, a great deal of concern with Richards's testimony that Davis had advised him the day they picked the jury not to testify, that he agreed with her, and that "all of sudden, out of the blue, she called [him] to testify with no warning, no nothing." Tr. of July 21 Session at 86. As the court noted, the record of the criminal trial seems to contradict that testimony. Trial Tr., Vol. 4 at 165-67. Upon further study, the court is not so certain Richards intentionally misrepresented what happened. It is likely that Richards did not understand Davis's intentions from time to time and that his answers to the questions she posed to him before he testified at trial may have been somewhat misleading.

Davis knew that in order to establish a self-defense theory, she would have to put Richards on the stand:

> Q.   How were you going to prove up self-defense in this case?
>
> A.   Well, I mean, once I knew I had to, once I knew that we had to have that -- Well, I mean, because he was telling me that it was -- Once he admitted he did indeed hit him, but I hit him in self-defense, then we had to develop that strategy immediately.
>
>      And he told me that it was because -- I mean, he told me how that happened out there on the Slab, and I was going to prove it up by, you know, him -- <u>he was going to have to testify.  He was going to have to say what happened</u>. . . .

Tr. of July 22 Session at 30 (emphasis added).  The court finds that, notwithstanding Davis's testimony to the contrary, Davis was pursuing a self-defense theory, albeit a poorly defined one, from the beginning of the trial, and intended from the very outset of the trial to put Richards on the witness stand.

The court hesitates to speculate on what Davis had in mind when she had Richards testify at his trial that it was with reluctance on her part that she was calling him to the stand, Trial Tr., Vol. 4 at 165-67; however, the court concludes that the exchange was not for the benefit of Richards, and that it was designed to serve some undisclosed goal of Davis's.

23

On other subjects about which Richards testified, the court had the impression that Richards was telling the truth. The court has not overlooked Richards's post-trial letter to Davis (contained in Petitioner's Exhibit 11) that shows that Richards was convinced during and at the end of trial that Davis was providing him good trial representation. However, the court does not credit Richards with having had the knowledge as his criminal trial approached and developed that would be required to evaluate the adequacy of that representation.

V.

Further Discussion of the Features of Richards's
Ineffective-Assistance-of-Counsel Ground
About Which the Court Has Concern

The discussions under this heading supplement the discussions on the same subjects that are found in the June 2 Order. Richards, 2008 WL 2346184, at *2-12.

The legal principles by which the court is guided in making its findings and reaching its conclusion on Richards's ineffective-assistance-of-counsel claim are those now firmly established by Supreme Court law. In order to prevail on an ineffective-assistance-of-counsel ground, Richards must show (1) that his counsel's performance fell below an objective standard of reasonableness and (2) that there is a reasonable probability

that, but for his counsel's unprofessional errors, the result of the proceedings would have been different. Strickland, 466 U.S. at 688, 694. "A reasonable probability is a probability sufficient to undermine the confidence in the outcome." Id. at 694. Both prongs of the Strickland test must be met to demonstrate ineffective assistance. Id. at 697.

To establish the first prong, Richards must overcome a strong presumption that his counsel's conduct falls within the wide range of reasonable professional assistance. Id. at 689. Judicial scrutiny of counsel's conduct must be highly deferential, with every effort made to avoid the distorting effects of hindsight. Id. at 689-90. It is not enough to show that some, or even most, defense lawyers would have handled the case differently. Green v. Lynaugh, 868 F.2d 176, 178 (5th Cir.). For the second prong, Richards must show that his counsel's errors were so serious as to "deprive [him] of a fair trial, a trial whose result is reliable." Strickland, 466 U.S. at 687.[11]

---

[11]If Richards cannot show that the ineffectiveness of his counsel deprived him of a substantive or procedural right to which the law entitles him, then he must show that the result of the proceeding was fundamentally unfair or unreliable. Williams v. Taylor, 529 U.S. 362, 391-93 (2000) (discussing Lockhart v. Fretwell, 506 U.S. 364 (1993), and Nix v. Whiteside, 475 U.S. 157 (1986)).